UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL J. PRICE

     Petitioner,

v.                                   CASE NO. 8:09-cv-1882-T-23MAP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Price petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1)

and challenges his convictions for kidnapping, for which Price serves eighteen years

in prison.  Numerous exhibits ("Respondent's Exhibit ___") support the response.

(Doc. 7)  The respondent correctly argues that some of the grounds are procedurally

barred from federal review and that the remaining grounds lack merit.  The

respondent offers no challenge to the petition's timeliness.

## FACTS[1]

     In 2004 Price was arrested for battering his girlfriend.  Price struck the victim

several times and prevented her from fleeing her apartment by continuing to abuse

---

    [1]   This summary of the facts derives from Price's initial brief and his habeas petition.
(Respondent's Exhibit 4 and Doc. 1)

her.  The victim eventually escaped Price and hid in the bushes surrounding the

apartment until law enforcement arrived.  Two sheriff's deputies arrived and arrested

Price after witnessing the badly beaten victim running toward them with Price close

behind her.  A jury found Price guilty of felony battery, resisting arrest without

violence, and kidnapping.  Price was sentenced to eighteen years in prison, which

was affirmed on direct appeal.  (Respondent's Exhibit 6)  Price asserted five grounds

of ineffective assistance of counsel in a timely Rule 3.850 motion, which was denied

and affirmed on appeal.  (Respondent's Exhibit 10)  Price asserts seven grounds in his

habeas petition, two of which are unexhausted.

## EXHAUSTION AND PROCEDURAL DEFAULT

Price must present each claim to a state court before raising the claim in federal

court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]'

federal claims to the state courts in order to give the State the 'opportunity to pass

upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*,

513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v.*

*Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will

encourage state prisoners to seek full relief first from the state courts, thus giving

those courts the first opportunity to review all claims of constitutional error."), and

*Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have

fairly apprised the highest court of his state with the appropriate jurisdiction of the

- 2 -

federal rights which allegedly were violated.").  Also, a petitioner must present to the

federal court the same claim presented to the state court.  *Picard v. Connor*, 404 U.S. at

275 ("[W]e have required a state prisoner to present the state courts with the same

claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to

exhaust."  *Duncan v. Henry*, 513 U.S. at 366.

A petitioner must alert the state court that he is raising a federal claim and not

just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal
> law basis for his claim in a state-court petition or brief, for example, by
> citing in conjunction with the claim the federal source of law on which
> he relies or a case deciding such a claim on federal grounds, or by
> simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  As a consequence, "[i]t is not enough that

all the facts necessary to support the federal claim were before the state courts, or that

a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6

(1982).  *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004)

("The exhaustion doctrine requires a habeas applicant to do more than scatter some

makeshift needles in the haystack of the state court record.") (citations omitted).

Finally, presenting a federal claim to a state court without the facts necessary to

support the claim is insufficient.  *See, e.g., Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir.

1983)[2] ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

The respondent opposes grounds five and seven specifically because Price failed to exhaust.[3]  The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand,*

---

[2]   Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[3]   Failure to exhaust a state remedy precludes review of the unexhausted claim unless the respondent specifically waives the procedural default.  "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." *McNair v. Campbell*, 416 F.3d 1291,1305 (11th Cir. 2005), *cert. denied*, 547 U.S. 1073 (2006).

*Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999).

Grounds Five and Seven:

Price claims that his counsel was ineffective for not objecting when photographs of both the victim and her apartment were admitted into evidence. Price contends that the trial court should have excluded the photographs because they were taken the day after the incident and because they were allegedly falsified to support testimony against him. In ground five Price claims that counsel was ineffective for not adequately objecting to the admission of the photographs. In ground seven Price claims that his counsel was ineffective for not filing a motion to suppress the photographs. Because Price presented neither of these claims in his rule 3.850 motion (Respondent's Exhibit 8), the claims are unexhausted and procedurally defaulted.

To overcome this procedural default, Price must show either (1) cause and prejudice or (2) a miscarriage of justice, such as "actual innocence" or "manifest injustice." *Rozzelle v. Sec'y Fla. Dep't of Corr.*, 672 F.3d 1000, 1008 (11th Cir. 2012). Price asserts no argument in either his petition or his reply to avoid this procedural default. Further, no basis for avoiding this default is facially visible from the record.

Consequently, Price's claims in grounds five and seven are procedurally barred from federal review.[4]  The remaining grounds are entitled to a review on the merits.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

---

[4]  Assuming Price could overcome his procedural default, grounds five and seven lack merit. "Authentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." § 90.901, Fla. Stat. (2004).  To prove that the photographs in question were what the proponent claimed, the prosecution provided evidence that the photographs were taken the day after the incident and the victim authenticated them as pictures of herself and the inside of her apartment.  (Respondent's 12 vol. 2 at 52)

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed Price's convictions and sentence on direct appeal. (Respondent's Exhibit 6) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Price's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 10) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784-85

("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Price bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Price's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 9)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Price claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Price must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Price must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Price cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done.  Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could have
> acted, in the circumstances, as defense counsel acted at trial . . . .  We
> are not interested in grading lawyers' performances; we are interested
> in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Price must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In determining "reasonableness," a federal petition for the writ of habeas corpus permits an independent assessment of "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" but not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he

standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In summarily denying Price's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 9 at 2)  Because the state court rejected the claims based on *Strickland*, Price cannot meet the "contrary to" test in Section 2254(d)(1). Price instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review require that the analysis of each claim begin with the state court's analysis.

Ground One:

Price alleges that his trial counsel was ineffective for not calling Kevin Hunter

as a witness.  Price alleges that Hunter was present during the incident and that

Hunter would have contradicted the victim's testimony.  Price alleges that Hunter

would have testified (1) that Price was angered after Hunter grabbed Price in a sexual

manner, (2) that Price never prevented Hunter or the victim from leaving the

residence, and (3) that Price only hit the victim in self-defense after he was threatened

when the victim began smashing glass bottles.  (Doc. 2 at 3)  Price's post-conviction

court reasonably applied *Strickland* and concluded that even if Hunter testified to

these facts, Price suffered no prejudice.  (Respondent's Exhibit 9 at 3)

Price unconvincingly argues that Hunter's alleged testimony would have

undermined the victim's testimony and the trial verdict.  The record shows that the

victim's testimony was supported by competent and substantial evidence.

(Respondent's Exhibit 9 at 4-6)  The victim's detailed testimony was corroborated by

numerous photographs and by the testimony of the two sheriff's deputies who first

arrived on the scene.  The post-conviction court found that the deputies' testimony

refuted both the allegations that Hunter was at the scene and that Price was acting in

self-defense.  (Respondent's Exhibit 9 at 6) (citations to the record omitted):

> The jury heard testimony from two law enforcement officers, Deputy
> John Damato and Deputy Ken Dolgos, who testified as to seeing the
> victim beaten, bloody, and frightened outside of her apartment the
> night of the incident.  Deputy Damato testified that the victim came
> running out from the apartment buildings towards his car, appearing

> "very upset" with facial injuries. And stated to him, "my boyfriend just tried to kill me." Deputy Dolgos testified that it was so difficult to talk to the victim because "of the state of mind that she was in." He added that she was "crying, upset, just hard to speak to" and that she "was really bad off." Deputy Damato and Deputy Dolgos both testified that they did not see Kevin Hunter at the scene that evening. In addition, there was no mention of Mr. Hunter in the probable cause affidavit.
>
> . . . .
>
> Further, both Deputy Damato and Deputy Dolgos testified that the Defendant had no visible injuries or defensive wounds when they observed him that evening.

Price also alleges that Hunter would have testified that he helped the victim falsify photographs admitted into evidence. (Doc. 2 at 3) Price's claim is unpersuasive for several reasons. First, the proposition that Hunter would freely incriminate himself by admitting to evidence tampering in open court is unreasonable. Second, the photographs in question were properly authenticated and admitted by the court with the understanding that they were taken the day after the incident. (Respondent's 12 vol. 2 at 52) Lastly, the photographs' accuracy in depicting the victim's injuries was supported by the testimony of Deputies Damato and Dolgos. (Respondent's Exhibit 9 at 6)

The post-conviction court reasonably concluded that Price could not show prejudice. There is no reasonable probability that Hunter's alleged testimony would have impeached the testimony of the victim, Deputy Damato, and Deputy Dologos. Analysis of deficient performance is not necessary because Price shows no prejudice.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  Consequently, ground one lacks merit.

Ground Four:

Price alleges that counsel incorrectly advised him on his right to testify by informing Price that the prosecution would use his prior convictions to impeach him.[5]  Price alleges that he would have testified that he was only reacting to the actions of both Hunter and the victim on the night of the incident.  (Doc. 2 at 11)  The post-conviction court reasonably applied *Strickland* in determining that Price failed to show prejudice.  (Respondent's Exhibit 9 at 14-15):

> The Defendant states that if he testified, he would have testified that the victim "made this event up," that he was acting in self-defense, and at no time did he keep the victim from leaving the residence.  The Defendant claims that he was keeping the victim from injuring herself, injuring him, and from damaging the property.  According to the Defendant, if counsel had not misadvised him and he testified at trial, the outcome would have been different.

> This Court adopts its reasoning and analysis at set forth in Issue One and finds the weight of the evidence presented at trial was so overwhelming and significantly contrary to the statements the Defendant alleges he would have made upon testifying, that he has failed to demonstrate that he was prejudiced by counsel's alleged misadvice.

---

[5]  Price also alleges that counsel incorrectly advised him that the prosecution would use his learning disability to attack his testimony.  A claim for ineffective assistance on this basis was never presented to the state court and is procedurally defaulted.  *See Picard v. Connor*, 404 U.S. at 275.  Discussion of whether Price can overcome his procedural default is not necessary because there is no reasonable probability that Price's testifying would have changed the outcome.  *Strickland*, 466 U.S. at 687.

The evidence presented against Price was extensive.  A significant portion of the victim's detailed testimony was corroborated by testimony of sheriff's deputies who saw the victim run toward them with Price chasing her.  (Respondent's Exhibit 12 vol. 2 at 69)  The two deputies testified that, although the victim was badly beaten, Price had no visible defensive injuries.  (Respondent's Exhibit 12 vol. 2 at 74 and 84)  The victim's testimony was also supported by the photographs that were entered into evidence.  (Respondent's Exhibit 12 vol. 2 at 49 and 53)  The post-conviction court reasonably determined that the evidence was overwhelmingly contrary to Price's proposed testimony.

The post-conviction court properly applied *Strickland* in finding that Price was not prejudiced by counsel's alleged misadvice.  Price fails to show that his self-serving testimony was "sufficient to undermine the outcome of the trial." *Strickland*, 466 U.S. at 694.  Instead, Price's allegation of self-defense is refuted by the abundance of evidence to the contrary.  Analysis of deficient performance is not necessary because Price shows no prejudice. *Sims*, 155 F.3d at 1305.  Consequently, ground four lacks merit.

Ground Two:

Price claims that his counsel was ineffective for not filing an adequate motion for judgment of acquittal.[6] Price alleges that counsel preformed deficiently because the motion for judgment of acquittal failed to allege that the state could not prove all of the elements of kidnapping.  (Doc. 2 at 5)  Price argues that counsel's performance was prejudicial because the court would have granted a judgment of acquittal had counsel advanced the proper motion.  (Doc. 2 at 6)

Price's allegation of deficient performance is refuted by the record because a review of Florida's kidnapping statute shows that counsel's motion properly challenged the elements of the offense.  Florida defines kidnapping as (1) the confinement of a person against his or her will, (2) without lawful authority and, (3) with the intent to "inflict bodily harm upon or to terrorize the victim . . . ." § 787.01(1)(a)(3) Fla. Stat. (2004).  Because the prosecution based the kidnapping charge on the allegation that Price confined the victim to facilitate a felony battery, the trial court properly charged the jury (Respondent's Exhibit 12 vol. 1 at 27) on the

---

[6]   Although the respondent addresses ground two on the merits, the claim is unexhausted and subject to procedural default.  Price's 3.850 motion mentions trial counsel's motion for judgment of acquittal but provides no specific claim concerning the adequacy of that motion.  (Respondent's Exhibit 8 at 5)  The exhaustion doctrine requires Price "do more than scatter some makeshift needles in the haystack of the state court record." *Kelley*, 377 F.3d at 1345.  Price has procedurally defaulted ground two because he failed to present the federal court with the same claim he presented to the state court. *Picard v. Connor*, 404 U.S. at 275.  Assuming Price can overcome procedural default, relief is denied because ground two lacks merit.

meaning of "confinement," as defined in *Faison v. State*, 426 So. 2d 963, 965 (Fla. 1983):

    a) Must not be slight, inconsequential and merely incidental to the other crime.
    b) Must not be of the kind inherent in the nature of the other crime; and
    c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Therefore, the prosecution had the burden of proving both confinement and that the confinement facilitated the commission of a felony. Counsel's motion for judgment of acquittal attacked the kidnapping charge by first attacking the state's sufficiency of evidence for the felony battery charge. (Respondent's Exhibit 12 vol. 2 at 87-88) Counsel asserted that "[a]s to the kidnapping charge, I would like to move for a judgment of acquittal based on the fact that [Price] was not committing a felony." (Respondent's Exhibit 12 vol. 2 at 88) Counsel was not deficient for failing to assert that the state's evidence was insufficient to prove each element of kidnapping.

Assuming deficient performance, a review of the record shows no prejudice because the prosecution presented competent evidence to overcome Price's proposed motion. Florida precedent establishes that the standard for a judgment for acquittal is whether the prosecution has "introduce[d] competent evidence inconsistent with the defense's theory." *Haugabrook v. State*, 827 So.2d 1065, 1068 (Fla. 2nd DCA 2002). The trial court must review the prosecution's evidence in a light most

favorable to the state in determining whether "the jury could infer guilt to the exclusion of all other inferences." *State v. Law*, 559 So. 2d 187, 189 (1989). The prosecution is not required to conclusively rebut every possible variation of events inferred from the evidence. *Law*, 599 So. 2d at 189. The prosecution only needs to offer legally sufficient evidence inconsistent with the defense's theory. 599 So. 2d at 189.

The post-conviction court reviewed the trial transcript and found that the prosecution had presented sufficient evidence. (Respondent's Exhibit 9 at 9) (citations to the record omitted):

> At the Defendant's trial, the testimony and evidence presented established the elements of kidnapping: that the Defendant kept [the victim] in her apartment against her will, he did not have authority to do so, and he acted with intent to harm or terrorize [her]. [The victim] testified that after she had been punched, grabbed and thrown around by the Defendant, he put a comforter over her face with her arms trapped underneath her body and would not permit her to move; [the victim,] thinking she was going to die, blacked out. After regaining consciousness, she attempted to leave the apartment to get away from him; however, the Defendant ran to the front door prior to her, shut the door, pulled her back in the apartment, and told her that she did not "need to go anywhere." The Defendant's confinement of [the victim] away from the doors of her apartment made the crime of battery easier to effectuate and also substantially lessened the risk of his detection by keeping [the victim] from leaving, telling others about the incident and getting help. The restraint the Defendant placed on [the victim's] movement during the events of that evening was not merely incidental to the commission of the battery, nor was it necessary or inherent to the crime of battery, but rather a separate and distinct act of confinement. *See Faison v. State,* 426 So. 2d at 966.

The prosecution entered into evidence numerous photographs to support the victim's detailed testimony that Price subjected her to a prolonged beating and precluded her

from leaving.  (Respondent's Exhibit 12 vol. 2 at 48-54)  Deputies Damato and

Dologos' testimony corroborated the prosecution's evidence that the victim looked

and acted like she had endured a prolonged beating.  (Respondent's Exhibit 12 vol. 2

at 69)  The deputies also testified that Price had no visible injuries or defensive

wounds.  (Respondent's Exhibit 12 vol. 2 at 74 and 84)  The prosecution provided

substantial evidence through photographs and witness testimony supporting the

allegation that Price struck the victim multiple times and prevented her from escaping

his control by continuing to abuse her.  Price shows no prejudice because his counsel

advanced a proper motion for a judgment of acquittal and Price's suggested

expansion of the motion would not have changed the outcome.  Because Price's

claim satisfies neither component of *Strickland*, ground two lacks merit.

Ground Three:

        After the jury read the verdicts on all three counts, the trial judge observed a

significant emotional reaction by the jury after the clerk read not guilty on the

kidnapping charge.  The trial judge began polling the jury and after the first two

jurors disagreed with the not guilty verdict the jury was ordered to conduct further

deliberations.  (Respondent's Exhibit 12 vol. 2 at 132)  Price alleges that his counsel

was ineffective for both not moving for a new trial on the kidnapping charge and

filing a deficient motion for a mistrial.  (Doc 2 at 9)  The post-conviction court denied

both claims.

The post-conviction court reasonably determined that there was no legal basis for a new trial. (Respondent Exhibit 9 at 9):

> Based on the [evidence] above, the verdict rendered by the jury finding the Defendant guilty of kidnapping was not contrary to the weight of the evidence; therefore, even if defense counsel had raised a motion for new trial, there would not have been a basis for relief. Accordingly, the Defendant has failed to establish prejudice and his claim for relief is denied.

The overwhelming evidence for a kidnapping conviction, cited throughout this order, demonstrates that the post-conviction court reasonably determined that the jury verdict was not against the weight of the evidence. The post-conviction court reasonably found no prejudice under *Strickland* because there was no basis to grant a new trial. Further, because no motion for a new trial would have had merit, Price's counsel was not deficient for failing to assert the motion. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Consequently, this portion of Price's claim lacks merit.

The post-conviction court also reasonably determined that his counsel was not ineffective for filing an allegedly deficient motion for a mistrial. (Respondent's Exhibit 9 at 9-12) (citations to the record omitted):

> First, the Defendant claims that counsel was ineffective for not making a proper objection and moving the Court for a mistrial when the jury had to be returned to its deliberation after a juror indicated the verdict read did not reflect the verdict of the jury. After the reading of the verdict by the clerk, stating the jury found the Defendant guilty of battery on Count 1, guilty of resisting an officer without violence (a lesser-included offense) on Count 2, and *not guilty* of kidnapping on Count 3, the Court made the following statement to the foreperson of the jury, Mr. Robert Lilly:

THE COURT:  Mr. Lilly, I can tell by your reaction that --- well, I'm going to have my clerk poll the jury, to make sure that that is the jury [verdict] of each individual juror and the jury as a whole.  If it is, by all means say that it is.  If it is not, by all means say that it is not.  I can tell by your reaction that something's unusual.  Madame Clerk, start with Mr. Lilly.

THE CLERK:  Robert John Lilly, are these your verdicts?

JUROR LILLY:  No.

THE COURT:  Jo Ann Altergott, are these your verdicts?

JUROR ALTERGOTT:  No.

THE COURT:  Okay.  Before I even continue any further, I'm going to send you back into the jury deliberation room, I will give you the verdict form, I will ask that you retire to continue deliberating your verdict.  The fact that the two of you have said no causes me to -- and based on your reaction -- causes me to believe there is some issue here, so I need you to go back there, consider your verdict, make sure that your verdict is the verdict of each juror, and the verdict of the jury as a whole, and then knock on the door when you've done that, and we will reconvene.

A JUROR:  Thank you.

THE BAILIFF:  Just change the forms, sir, if there's a difference from . . . .

THE COURT:  Just whatever they do, they do.  For the record, I wanted to make a notation that when the clerk was reading the verdict, particularly as to Count 3, at least that's when I noticed it, the foreperson looked visibly shaken, appeared to me to be almost a little bit emotional -- emotional reactions are somewhat common in jury verdicts, but his reaction was so pronounced that's what caused me to ask my clerk to verify that indeed those were the verdicts.  And it did

- 23 -

not surprise me when he said "no" based upon his visible reaction, when the second juror said "no," rather than go through that whole questioning them individually.  I thought I'd send them back out.  And whatever verdict they return with, we will verify that it is indeed their verdict individually and the verdict as a jury as a whole.  Anything you want to put on the record?

MS. SANCHEZ:  Yes, your Honor.  Not being familiar with this issue . . . .

[THERE WAS A KNOCK FROM THE JURY ROOM.]

THE COURT:  Hold on just a minute, we'll tell them we'll be with them in just a second.

THE BAILIFF:  They have a verdict, sir.

MS. SANCHEZ:  Not being familiar with this area, and not having had this happen before.  I would like to move for a mistrial to preserve any error that may be -- may have caused, since the verdict was read.

THE COURT:  Okay.  Your motion is denied.  Obviously it is preserved for the record . . . .

THE COURT:  I didn't give them a new verdict form, so I'm not sure how they have marked this one, but we will see when they bring it out.  I'll ask that my clerk poll them.  For the record, it's only been less than a minute that they've been back out.  That leads me to believe they had reached a verdict, but maybe it wasn't accurately reflected on the verdict form . . . .

Upon the jury's return to the courtroom, the clerk read their verdict, pronouncing the Defendant guilty of battery in Count 1, guilty of resisting an officer without violence in Count 2, and *guilty* of kidnapping in Count 3.  The clerk indicated that the verdict form was signed by foreperson Robert J. Lilly.  After the clerk's reading of the verdict the Court requested that the clerk poll each individual juror; all six jurors answered that, the verdict was theirs.  On the corrected verdict form and under Count III, the

"X" beside subsection "c" finding the defendant not guilty was
crossed out, the initials "RJL" were written, and an "X" was placed
beside subsection "a" finding the defendant guilty of kidnapping.

The Defendant claims that counsel essentially moved for a mistrial
in a deficient manner.  According to the Defendant, his counsel
should have been more prepared to deal with this type of situation
and had counsel articulated a proper objection in a more thorough
manner the Court would have granted the motion and the outcome
of the Defendant's case would have been different.

The Court finds the Defendant's claim is without merit; counsel's
performance was neither deficient nor prejudicial to his case.  The
trial court did not commit any error when, upon seeing the
foreperson's reaction to the clerk's reading of the verdict and hearing
from two jurors that it was not their verdict, it returned the jury back
to the deliberation room.  The foreperson's visible shock at the
reading of the original verdict, the indication from the first two
jurors polled that the verdict was not theirs, and the jury's return less
than a minute after they were sent out to continue deliberations
supports the fact that there was a clerical error in the filling out of
the verdict for Count 3.  Counsel for the Defendant did make a
motion for a mistrial, which the Court denied.  Since the trial court
was not in error, there would have been no basis by which to grant
any further motion by the defense counsel.  *See Thomas v. Slate,* 789
So. 2d 1104 (Fla. 4th DCA 2001).  Therefore, the Defendant has not
established that he was prejudiced in any manner.

Review of Florida precedent shows that Price was not prejudiced by counsel's

allegedly deficient motion because there was no legal basis for a mistrial in this case.

Therefore, the post-conviction court correctly found no error by the trial court.

Price admits in his petition that once a juror voices a disagreement with the

verdict the court may order the jury to deliberate further.  *Brutton v. State*, 632 So. 2d

1080, 1082 (Fla. 4th DCA 1994).  However, Price erroneously asserts that an

adequate basis for a mistrial exists when a juror disagrees with the verdict during

polling.  (Doc. 2 at 9)  *See Bouie v. State,* 540 So.2d 925 (Fla. 3d DCA 1989) (holding

that there is no basis for a new trial where a juror states his disagreement with the

verdict during polling).   In this case, two jurors were polled and both disagreed with

the verdict as originally read.   After a brief consultation in the jury room the jury

returned in less than a minute with a unanimous guilty verdict.   (Respondent's

Exhibit 12 vol. 2 at 134-35)   This is highly suggestive of a scrivener's error by the jury

and not the result of "attempted coercion" by the trial court.   *See Gonzalez v. State*, 627

So.2d 63, 64 (Fla. 2d DCA 1993).   The post-conviction court reasonably found no

prejudice because the proposed motions for a mistrial and a new trial lack a legal

basis.   Analysis of deficient performance in counsel's motion for mistrial is not

necessary because Price shows no prejudice.   *Sims*, 155 F.3d at 1305.   Consequently,

ground three lacks merit.

Ground Six:

Price alleges that counsel was ineffective for not timely objecting to the jury

instructions.   Price contends that the omission of the lesser-included offense to the

kidnapping charge confused the jury and caused a guilty verdict.   (Doc. 2 at 14)   The

respondent correctly asserts (Doc. 7 at 37) that the record directly refutes the

allegation that the jury instruction of "false imprisonment" was omitted.[7]   Ground six

is construed to assert the same claim raised in ground three of Price's 3.850 motion,

---

[7]   Price bases ground six on the assertion that fundamental error occurs when an omission of a jury instruction is material to what a jury must consider to convict.  (Doc. 2 at 14)  A claim for ineffective assistance on this basis was never presented to the state court and is procedurally defaulted.  *See Picard v. Connor*, 404 U.S. at 275.  Discussion of whether Price can overcome his procedural default is unnecessary because his claim that an instruction was omitted is directly refuted by the record.  (See Respondent's Exhibit 12 vol. 1 at 30)

which was based on the sequence in which the jury instructions were read.  The post-conviction court reasonably determined that the record refutes the claim of improper or confusing jury instructions.  (Respondent's Exhibit 9 at 13-14) (citations to the record omitted):

> According to the Defendant, had the Court read the instructions in proper sequence, placing the lesser [offense] of false imprisonment after the kidnapping instruction, the jury would have found him guilty of the lesser [offense].  If his counsel had not failed to object to the instructions as read, the outcome of his trial would have been different.
>
> A review of the trial transcript reveals that the court read instructions in the following order:  battery, resisting an officer with violence, kidnapping, resisting an officer without violence, false imprisonment. Essentially, during this reading of the jury instructions, the trial court read the "resisting an officer without violence" instruction out-of-order.  The Defendant is not alleging that an instruction was misread or omitted, but merely that false imprisonment, the lesser-included offense, was not read immediately after the kidnapping instruction. The Court finds this claim is without merit.  The jury instructions, as read by the Court, did not misstate the law; neither did the Court omit anything, but merely read one portion of the instructions out of sequence.  There is no basis by which to believe that this reading of the instructions would have confused or in any manner, misled the jurors. Further, as the Court stated on the record, the jurors had copies of the instructions to take back to the jury deliberation room with them. Instruction 3.4 explains that false imprisonment is a lesser-included crime to kidnapping and specifically instructs the jurors that they "should consider the possibility that[,] although the evidence may not convince you that the defendant committed the main crime of which he is accused[,] there may be evidence that he committed other acts that would constitute a lesser-included crime."
>
> In addition, the jurors received Instruction 9.2, the definition of false imprisonment pursuant to section 787.02, Fla. Stat.  The Court must assume that the jury followed its instructions.  Based on the foregoing, the Defendant has failed to establish that counsel's performance was deficient or that he was prejudiced in any manner by his counsel's failure to object to the reading of the jury instructions; therefore, the Court denies relief as to this claim.

The post-conviction court reasonably applied *Strickland* in holding that Price failed to show ineffective assistance.  The alleged error, concerning the sequence in which the instructions were read, was not prejudicial.  *See United States v. Marques*, 600 F.2d 742, 749 (9th Cir. 1979) (holding that Marques was not prejudiced when the jury instructions were not read in his preferred order).  Price alleges that if his trial counsel objected to the jury instructions "the jury would not have become confused and easily led to a verdict of guilty."  (Doc. 2 at 15)  However, while the instructions were not read in the sequence Price preferred, the trial court properly read each instruction to the jury.  Further, the jurors were provided with printed copies of each instruction and guidelines for considering lesser-included offenses.  (Respondent's Exhibit 12 vol. 2 at 25-31)  Federal courts will not "blindly accept speculative and inconcrete claims" as the basis for ordering a hearing.  *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985).  Price asserts a speculative claim because he fails to provide a legitimate basis for how the allegedly confusing instructions continued to prejudice him after the jury received printed copies of the correct instructions.

Further, a crucial assumption underlying the jury system is that a jury will follow the trial judge's instructions.  *Parker v. Randolph*, 442 U.S. 62, 73 (1979).  The jurors were provided with the correct instructions and Price offers no evidence to overcome the presumption that the jurors followed each instruction.  The post-conviction court's finding no prejudice was a reasonable application of *Strickland*.

Analysis of deficient performance is not necessary because Price shows no prejudice. *Sims*, 155 F.3d at 1305.  Consequently, ground six lacks merit.

Accordingly, Price's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Price and close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS

Price is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Price must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Price fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Price cannot meet *Slack*'s prejudice requirement.  529 U.S. at 484. Finally, Price is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Price must pay the full $455 appellate filing fee without installments unless the Circuit Court allows Price to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on July 26, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE